HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAROLYN ANDERSON, | No. 11-cv-902 RBL |
| Plaintiff, | ORDER |
| v. | |
| DOMINO'S PIZZA, INC., DOMINO'S PIZZA, LLC, FOUR OUR FAMILIES, INC., AND CALL-EM-ALL, LLC | |
| Defendants. | [Dkts. #45 and 75] |

Before the Court is Domino's Pizza, Inc., and Domino's Pizza, LLC's motion for a protective order. [Dkt. #45]. The Domino's entities, which will be referred to in the singular for ease of reference, argue that certain of Plaintiff's requests for production are irrelevant, not reasonably calculated to lead to discovery of relevant information, overly broad and burdensome, or covered under a stipulated protective order arising in separate litigation. *See* Defs.' Mot. for Protective Order at 1. The Court grants the motion in part and denies in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

**A. Nature of the Case**

The Complaint alleges that Defendants placed numerous calls to Plaintiff and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (TCPA), and Revised Code of Washington § 80.36.400 (Washington statute governing "automatic dialing and announcing devices") ("WADAD"). Plaintiff asserts that Defendants made the calls, each containing a pre-recorded message identifying the sender as "Domino's Pizza," without prior

consent of the recipients. Additionally, the Complaint alleges both national and Washington State classes.

In response, Domino's argues that these "robo-calls" were made by a Domino's franchisee (Four Our Families) who hired a telemarketing firm (Call-Em-All) to make the actual calls, and thus, the franchising entities (Domino's) bears no liability.

**B. Discovery Dispute**

Domino's seeks protection from Plaintiff's fourth, fifth, and sixth requests for production. Specifically, Domino's requests a protective order regarding RFPs 27, 32, and 45 (relating to similar litigation in Louisiana, i.e., the *Spillman* litigation); RFPs 36, 39, and 40 (addressing "out-of-state issues," according to Domino's),[1] RFPs 29 and 41 (addressing an "opt-in" program),[2] RFP 28 (addressing the PULSE program); and lastly, RFPs 34 and 38 (relating to employee information).

Notably, after filing this motion, Plaintiff responded to Domino's motion for summary judgment [Dkt. #73] stating that it was abandoning its claims under the TCPA. Thus, the Court resolves these issues only to the extent that they affect Plaintiff's state law claims.[3]

## II.   DISCUSSION

Under Federal Rule 26, governing the scope of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). A court may however, grant a protective order for "good cause" to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

---

[1] RFPs 36 and 40 do not appear in the record.
[2] RFP 41 does not appear in the record.
[3] Due to the length of litigation, discovery, and the pending motions in this case, the Court will retain supplemental jurisdiction over the case despite the lack of federal claims. *See* 28 U.S.C. 1367(c) (noting that Court "may," but is not required to, decline to exercise supplemental jurisdiction when the district court has dismissed all claims over which it had original jurisdiction).

**A. Discovery Related to RPM and the *Spillman* Litigation (RFPs 27, 32, and 45)**

Plaintiff's RFP 27 seeks "all e-mails or letters to RPM from you or to RPM from you [sic] regarding: a. Pulse; b. The Telephone Opt-In Program; c. The Litigation Against RPM; d. This Litigation."  Defs.' Mot. for Protective Order at 4.  Domino's explains that RPM is a Louisiana-based franchisee, and the request relates to TCPA litigation involving RPM—*Spillman v. Domino's Pizza*, 10-cv-349 (M.D. La. 2010).  *Id.*  Because RPM is an out-of-state entity, Domino's argues, the request is irrelevant.  Defs.' Mot. for Protective Order at 4.

In response, Plaintiff asserts that RPM is the largest Domino's franchisee and was involved in "extensive robo-calling"; thus, the marketing-related communications between Domino's and RPM may shed light on the degree of control Domino's exercises over its franchisees.  *See* Pl.'s Resp. at 3.

The Court must conclude that parts (a) and (b) of RFP 27 are overbroad and lacking relevance.  Plaintiff has a single named-plaintiff from Washington, has not sought to certify a national class, and has not therefore established a basis to seek discovery nationally.  And while communications between Domino's and RPM may reflect in general the degree of control Domino's exercise over its franchisees, Plaintiff fails to explain why the same issue cannot be more efficiently explored through a search of communications between Domino's and Four Our Families—the relevant parties here.

Part (c), relating to the RPM litigation may be tangentially relevant, but is still overbroad. Plaintiff argues that information about prior litigation is "highly likely to lead to admissible evidence about the defendant's awareness of the law and violation thereof."  Pl.'s Resp. at 5.  In so arguing, Plaintiff relies on *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D. Ill 2009), where a federal magistrate judge compelled discovery of "information relating to other lawsuits and/or proceedings in which NCO was charged with violating the TCPA."  *Id.* at 505. The request in *Donnelly*, however, is quite different from Plaintiff's request.  In *Donnelly*, plaintiff sought essentially a list of cases in which the defendant had been sued for violating the TCPA.  That list would be "relevant to [defendant's] knowledge of the TCPA and the actions it did or did not take to ensure compliance with the statute."  *Id.*  Here, Plaintiff has requested a

large amount of information relating to one specific case involving a different franchisee in a different state. Indeed, Plaintiff has requested essentially the entire production from the *Spillman* litigation. *See* Defs.' Mot. for Protective Order at 8 (quoting RFPs 32 and 45). In sum, Plaintiff may seek specific documents about Domino's efforts at compliance following the *Spillman* litigation, or show another relevant basis for discovery into that matter, but Plaintiff has not shown grounds to force Domino's to recreate the *Spillman* discovery wholesale.

Part (d)—requesting communications between Domino's and RPM about this litigation—is fair game.

Thus, the Court grants a protective order as to RFPs 27, 32, and 45, to the extend specified above.

**B.  Discovery Related to "Out-of-State" Issues (RFPs 36, 39, 40)**

RFP 39 reads: "Produce all documents related to any complaints by any customers of any franchisee regarding automated calls." Defs.' Mot. for Protective Order at 6. Domino's argues that "any calls to anyone outside of Washington [are] completely irrelevant." *Id.* Not so. Given that Plaintiff has abandoned her TCPA claims, only compliance with Washington law remains. Thus, complaints by customers nationally are not relevant to determining Domino's potential liability under WADAD. The Court therefore grants a protective order as to RFPs 36, 39, and 40.

**C.  Discovery Related to the PULSE Program and Telephone Opt-In Program (RFPs 28, 29, and 41)**

Domino's objects to RFPs 28[4] and 29,[5] relating to the PULSE program and telephone opt-in program. Domino's states that PULSE is "a point of sale program used by all Domino's franchisees," and because it is so widely used, the request is overbroad, burdensome, and irrelevant. Defs.' Mot. for Protective Order at 6. The opt-in program, Domino's states, was not used by Four Our Families, and any discovery related to it is therefore irrelevant.

As telemarketing-related programs, both the PULSE and opt-in programs are relevant to Plaintiff's claims that Domino's asserted control over its franchisees' marketing, and thus, bears

---

[4] RFP 28 reads: "Produce all documents related to the PULSE program."
[5] RFP 29 reads: "Produce all documents related the [sic] telephone opt in program."

liability for the alleged WADAD violations.  The RFPs in question, however, are overbroad.  They contain no limitations as to scope or time.  Plaintiff may rightly discover documents from both programs, but should reasonably limit these requests.

### D.  Discovery Related to Employee Information (RFPs 34 and 38)

Domino's objects to RFPs 34[6] and 38,[7] relating to Rick Rezler and others, as overbroad.  Defs.' Mot. for Protective Order at 7.  Plaintiff explains that Mr. Rezler wrote an article on robo-calling, and the request seeks to determine Mr. Rezler's role at Domino's.

As in the RFPs above, RFP 34 requests information relevant to Domino's potential liability, but the RFP lacks any sort of reasonable limitation on scope or time.  Requesting every document relating to Mr. Rezler is, on its face, overbroad.  Additionally, the Court trusts that the parties can revise the unknown RFP 38 to comport with this order and any revisions to RFP 34.

### E.  Effect of the *Spillman* Stipulated Protective Order

In order to avoid further disputes, the Court will address the issue of the *Spillman* protective order, although given the rulings above, the *Spillman* order likely has little impact.  Domino's asserts that certain information produced in the *Spillman* litigation cannot be produced here because it is covered by a stipulated protective order in that case.  Defs.' Mot. for Protective Order at 7.  The *Spillman* protective order obviously does not, however, protect Domino's own materials from discovery in this case; it prevents Domino's from producing any material from RPM or Ms. Spillman. (If it were otherwise, a party could immunize its own documents from discovery in later litigation.  And in any event, paragraph 16 of the stipulated protective order allows the party to use its own material "for any purpose."  Decl. of Rob Williamson, Ex. 1 ¶ 16.)  Materials produced by RPM and Ms. Spillman, if held by Domino's solely due to its role in the *Spillman* litigation and covered by the protective order, cannot be produced by Domino's without violating the order.

---

[6] RFP 34 reads: "Produce all documents related to Rick Rezler, including but not limited to news releases."
[7] Domino's states that RFP 38 requests, in part, "all documents related to any other of your employees."  Plaintiff asserts that RFP 38 is limited to employees involved with producing a certain news article.  Because neither party included the RFP in the briefing, as an exhibit, or anywhere else in the record, the Court cannot determine its scope.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for protective order.  [Dkt. #45].  Because Plaintiff has already responded to Defendants' motion for summary judgment, the motion to be relieved of deadline [Dkt. #75] is **DENIED** as moot.

Dated this 30th day of  March, 2012.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE