HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAROLYN ANDERSON,<br><br>      Plaintiff,<br><br>  v.<br><br>DOMINO'S PIZZA, INC., DOMINO'S PIZZA, LLC, FOUR OUR FAMILIES, INC., AND CALL-EM-ALL, LLC<br><br>      Defendants. | No.  11-cv-902 RBL<br><br>ORDER<br><br><br><br><br><br>[Dkts. #23, 31, 73, 77, 101] |

  Before the Court are motions for summary judgment from Defendants Four Our Families, Inc. ("FOFI") (Dkt. #73) and Domino's Pizza (Inc. and LLC)[1] (Dkt. #23), and Plaintiff's motion to compel (Dkt. #77) and to certify a class (Dkt. #31).

## I. BACKGROUND

### A. Factual Background

  The Complaint alleges that Defendants placed numerous calls to Plaintiff and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., and Revised Code of Washington § 80.36.400 (Washington statute governing "automatic dialing and announcing devices") ("WADAD").  Plaintiff asserts that Defendants made the calls, each containing a pre-recorded message identifying the sender as "Domino's Pizza," without prior consent of the recipients.  Plaintiff provides an "example of the script used in this case":

---

[1] The two entities will be referred to in the singular.

Order - 1

> Hi, this is Domino's Pizza with a special offer. To block these calls, press 3 during this call. If this is a voicemail, you can opt out by calling (866) 284-6198.
>
> Hi, your Parkland Spanaway Domino's Pizza is offering any large pizza for $10. You can choose from our American Legends Line, a Specialty Pizza, or Build-Your-Own up to 10 toppings for only $10. Hurry, this is for today only and it's for carry-out or delivery. Please call (253) 535-5000 to place your order. Tax and delivery charge may apply.

(Williamson Decl. ¶ 4, Dkt. #40).

In response, Domino's argues that these "robo-calls" were made by a Domino's franchisee (Four Our Families) who hired a telemarketing firm (Call-Em-All) to make the actual calls, and thus, the franchising entities (Domino's) bear no liability.

The general facts are largely undisputed. Domino's sponsored a national franchisee convention in 2009 in which it allowed Call-Em-All to advertise its business: automated calling. (Pl.'s Resp. at 5, Dkt. #38.) Domestic and international franchisees attended the convention. *Id.* Plaintiff states that Call-Em-All "went from having a few Domino's franchisees to about 50" following the event. *Id.* Further, Domino's requires franchisees to use the "PULSE" system, a software platform used to take and track orders and to store phone numbers. *Id.* at 6. It is this system that FOFI used to make the calls at issue. Plaintiff also notes that the Domino's franchise agreement states that "You agree to participate in all national and local and regional advertising and promotions as we determine to be appropriate for the benefit of Domino's System." *Id.* at 6–7. According to Plaintiff, "[t]he Franchise Agreement makes it clear that Domino's has an extremely broad right to control advertising and marketing decisions, including robo-calling campaigns . . . ." *Id.* at 7.

**B. Background Relevant to Plaintiff's Motion to Compel**

On February 10, 2012, Plaintiff's counsel deposed two 30(b)(6)-witnesses presented by Domino's: Christopher Roeser and Natalie Haydon. Plaintiff asserts that Mr. Roeser, Domino's manager of "precision marketing," was unprepared to discuss certain deposition topics, including "All communications or policies . . . regarding marketing with voice broadcasting or prerecorded telephone calls using automated dialing and announcing devices." (Pl.'s Mot. to Compel at 3, Dkt. # 77.) Plaintiff asserts that Mr. Roeser "did not review or search any documents, did not consult or confer with other employees, and in fact, did nothing to prepare . . . ." *Id.*

Additionally, Mr. Roeser was designated to testify as to Domino's use of a "telephone opt-in" program and communications with RPM, the largest Domino's franchisee. *Id.* at 3–4.  Plaintiff asserts that Mr. Roeser did not investigate communications between Domino's and RPM or any other franchisee.

Domino's asserts that Mr. Roeser's "seeming lack of knowledge is simply due to the fact that Domino's does not engage in robo-call marketing on a national level and has little, if any, involvement in [a] franchisee's local marketing plans." (Def.'s Resp. at 5, Dkt. #89.)  Further, "[i]f documents were sent related to the designated subject, the document would have passed through the computers of these two witnesses." *Id.*

Plaintiff further asserts that Ms. Haydon was unprepared to testify as to communications between FOFI regarding marketing in 2008–09. (Pl.'s Mot. to Compel. at 4.)  She reviewed only her own emails and communications with Michael Brown, FOFI's owner.  Ms. Haydon testified that she did not review policies or guidelines that were in effect in 2008–09. *Id.*

Domino's argues that Ms. Haydon, the area leader of field marketing for the Pacific Northwest, serves as the "point person" for all communications with Washington franchisees. (Def.'s Resp. at 7.)  Thus, any communications with FOFI would have been directed through her. *Id.*  Moreover, Ms. Haydon testified that she was unaware of any corporate guidelines regarding telemarketing or anything other than the "manager's reference guide" that would inform the policies. (*See* Williamson Decl. at 25–26, Ex. 3 (Dep. of Natalie Haydon, 24:21–25:8).)

## II.   DISCUSSION

### A. Motions For Summary Judgment

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

*Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### 1.   FOFI's Motion for Summary Judgment

FOFI argues that because "there was no option for [a] recipient [of its calls] to connect to a live operator/person," it did not "initiate a telephone conversation" within the meaning of WADAD. *See* R.C.W. § 80.36.400(2); (FOFI's Mot. for Summ. J. at 3.) Under WADAD, "no person may use an automatic dialing and announcing device for purposes of commercial solicitation." *Id.* The key language at issue is the definition of "commercial solicitation": "the ***unsolicited initiation of a telephone conversation*** for the purpose of encouraging a person to purchase property, goods, or services." *Id.* § 80.36.400(1)(b). Further, the statute defines an "automatic dialing and announcing device" as a device that "automatically dials telephone numbers and plays a recorded message once a connection is made." Wash. Rev. Code § 80.36.400(1)(a). In enacting the law, the legislature found that the use of auto-dialing and announcing devices:

> (1) [d]eprives consumers of the opportunity to immediately question a seller about the veracity of their claims
>
> (2) subjects consumers to unwarranted invasions of their privacy; and
>
> (3) encourages inefficient and potentially harmful use of the telephone network.
>
> The legislature further finds that it is in the public interest to prohibit the use of automatic dialing and announcing devices for purposes of commercial solicitation.

Wash. Rev. Code § 80.36.400 [1986 c 281 § 1].

To interpret the statute, the parties rely primarily on three Western District cases: *Hartman v. United Bank Card, Inc.*, No. 11-cv-1753 (W.D. Wash. Mar. 23, 2012) (Robart, J.); *Meilleur v. AT&T, Inc.*, No. 11-cv-1025, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) (Pechman, J.); and *Cubbage v. Talbots, Inc.*, No. 09-cv-911, 2010 WL 2710628 (W.D. Wash.

July 7, 2010) (Settle, J.).  In *Cubbage*, Judge Settle relied on the dictionary definition of "conversation" in holding that a prerecorded call "did not initiate a spoken exchange between two or more people" and "the mere transmittal of a recorded message is not a conversation." *Cubbage*, 2010 WL 2710628, at *5.  Thus, under *Cubbage*, when a commercial solicitor uses an auto-dialer to call a Washington resident, but plays *only* a prerecorded message—allowing no opportunity to speak to a real person—the call complies with WADAD.

Judge Pechman held in *Meilleur* that a commercial call that "asked [plaintiff] to call [defendant] back" constituted a conversation and thus violated WADAD.  *Meilleur*, 2011 WL 5592647, at *7.  The court distinguished *Cubbage*, reasoning that the *Cubbage*-call "merely advertised a sale" and did not therefore constitute a conversation.  *Id.*

Similarly, in *Hartman*, Judge Robart held that an advertising call that requested action from the recipient violated WADAD.  There, the call stated that "because of your credit processing history and the volume of your business, you qualify for a special program with record low rates . . . . Call me back today at toll free . . . ." *Id.* at 2.  Judge Robart reasoned that "nowhere in WADAD's prohibition of ADADs, or the relevant statutory scheme, is the requirement of a live person." *Id.* at 10.  Rather, "WADAD relates to automatic dialing and announcing devices, which by their very nature are devices, as opposed to persons.  It would be contrary to the language of the statute for the court to limit WADAD to prohibit only messages from devices which allow an option to speak to a live person." *Id.*  The caller "invited the recipient to return the call," and "[a]rmed with this information, the recipient presumably could return the ADAD message and enter into an exchange of information or ideas with the caller, resulting in a conversation." *Id.* at 11.  Thus, the call *initiated* a conversation within the meaning of WADAD.

Here, the call at issue requested action from the recipient—to return the call and purchase pizza. (Williamson Decl. ¶ 4.)  If unsolicited, such a call would be exactly the type envisioned by the legislature as an "unwarranted invasion of privacy."  To read WADAD as narrowly as

FOFI suggests would eviscerate the statute.[2]  The Court agrees with the analysis and holding in *Hartman*, and thus, denies FOFI's motion for summary judgment.

### 2. Domino's Motion for Summary Judgment

Domino's argues that "[t]here is no evidence that [it] directed or controlled any local advertising, or specifically, the telephone calls pertinent to this case." (Domino's Mot. for Summ. J. at 6, Dkt. #23.)  The Court agrees.

WADAD bars the "use [of] an automatic dialing and announcing device for purposes of commercial solicitation." Wash. Rev. Code § 80.36.400(2).  Unlike the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), WADAD does not impute liability to all entities "on whose behalf" calls were made.  Rather, WADAD plainly imputes liability to those who ***use*** an ADAD for commercial solicitation.  To survive summary judgment, Plaintiff must show that Domino's used, whether by direct use or by agency through FOFI, an ADAD. Plaintiff has not done so.

The fact that Domino's compels franchisees to use the PULSE system, which is capable of producing lists for ADAD-calling, does not compel the conclusion that Domino's was complicit in the allegedly illegal calling here.  Indeed, the use of an ADAD is not illegal if used to initiate ***solicited*** telephone conversation.  If FOFI or any other Domino's franchisee expressly asks its customers for permission to call them, any such call would be perfectly legal.  Thus, the mere fact that PULSE is required software and can produce a list of customer numbers does not suggest that Domino's directed FOFI to make unsolicited calls.  The same reasoning quashes Plaintiff's other argument.  The mere fact that Domino's requires franchisees to participate in marketing campaigns does not somehow mean that any franchisee's illegal use of an ADAD is imputed to the franchisor.

Lastly, it is not enough that Domino's benefitted from the calls (although they surely did).  Apart from the fact that the statutory language itself provides no basis for liability based

---

[2] Indeed, WADAD is remedial in nature and should be read broadly to accomplish its goal rather than narrowly with the effect of creating bizarre and legislatively-unintended loopholes. If the legislature had intended that auto-dialing and announcing calls were barred only if an actual person picked up the phone, it could easily have said so (e.g., "commercial solicitation is defined as the unsolicited initiation of a telephone conversation between two live persons").  It did not.

on "benefit," such a rule would dramatically expand the scope of WADAD, a task this Court is unwilling to perform.

Summary judgment is granted on Domino's Motion for Summary Judgment.

**B.  Plaintiff's Motion to Compel**

Plaintiff asserts that both Mr. Roeser and Ms. Haydon were unprepared to testify as to their designated deposition topics and requests an order compelling testimony and sanctions.

> Federal Rule 30(b)(6) states:
> In its notice or subpoena, a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . ***The persons designated must testify about information known or reasonably available to the organization***.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  The purpose of the rule is to streamline the discovery process.  *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (citing *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993)).  The rule "gives the corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf." *Id.* (quoting *U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996)).  Rule 30(b)(6) is not designed to be a memory contest, and a corporation has "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Id.* (quoting *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999); *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995) ("If the rule is to promote effective discovery regarding corporations, the spokesperson must be informed."); *In re: Vitamins Antitrust Litigation*, 216 F.R.D. at 172 (corporation is obligated to produce one or more Rule 30(b)(6) witnesses who are thoroughly educated about the noticed deposition topics and facts known to the corporation or its counsel)).

While Domino's 30(b)(6)-designees come dangerously close to warranting sanctions for failure to prepare, the Court is unconvinced that further preparation would have yielded different answers.  Indeed, Mr. Roeser and Ms. Haydon appear to be the two individuals tasked with

knowledge of telemarketing that would have had contact with FOFI. The deposition transcripts indicate that Defense counsel perhaps failed to advise the designees of the level of preparation necessary, but the transcripts also indicate that the designees had little other than their own computers to search. The designees primary failing appears to be in reviewing Domino's marketing policies in 2008–09, but these documents have been available to Plaintiffs though requests for production. Thus, the motion to compel is denied.

### C. Class Certification

Plaintiffs do not dispute that their motion for class certification was untimely. (Pl.'s Reply at 1, Dkt. #54). Under Local Rule, 23(i)(3):

> Within one hundred eighty days after the filing of a complaint in a class action, unless otherwise ordered by the court or provided by statute, the plaintiff shall move for a determination under Fed. R. Civ. P. 23(c)(1), as to whether the case is to be maintained as a class action. This period may be extended on motion for good cause. The court may certify the class, may disallow and strike the class allegations, or may order postponement of the determination pending discovery or such other preliminary procedures as appear appropriate and necessary in the circumstances. Whenever possible, where the determination is postponed, a date will be fixed by the court for renewal of the motion.

Plaintiffs rightly note that Defendants suffer no prejudice as a result of the their three-week delay, but they simultaneously fail to explain the cause of the delay.

Added to that problem, class certification here inflicts a grossly disproportionate and crippling liability, far beyond the actual damages suffered. While WADAD's imposition of significant statutory damages reflects the legislature's intent to harshly discourage unsolicited auto-calling, and in some cases a harsh damages award is appropriate, the class here is represented by a sole named plaintiff, and the burden of any award would fall on a small business. Combined with Plaintiff's untimeliness, the Court finds class certification inappropriate.

### III.   CONCLUSION

For the reasons stated above, Domino's motion for summary judgment is **GRANTED** (Dkt. #23); Plaintiff's motion for class certification is **DENIED** (Dkt. #31); FOFI's motion for

summary judgment is **DENIED** (Dkt. #73); Plaintiff's motion to compel is **DENIED** (Dkt. #77); Domino's motion for a protective order is **DENIED AS MOOT** (Dkt. #101).

Dated this 15th day of May 2012.

Ronald B. Leighton
United States District Judge